## VILLALOBOS vs. MOONEY.

APPEAL FROM THE COURT OF THE PARISH OF NEW ORLEANS.

| 2L | 331 |
|---|---|
| 49 | 995 |
| 2 | 331 |
| 114 | 32 |

A proprietor may cancel at pleasure the contract with an undertaker to build ; but in the exercise of this right, the use of it must be considered as putting an end to the contract in all its parts and relations, and authorizes a valuation of the expense and labour incurred by the undertaker, by other evidence than that of the written contract itself.

The amount stipulated in a contract thus avoided, may be correctly used as a means to ascertain the just value of the work performed, but ought not to be considered in exclusion of all other testimony.

Where architects and undertakers are called upon to estimate the value of work and materials, and differ in their opinions, the lowest estimate will be taken.

Unless there be a contrary stipulation in a contract for building, the materials of an old house removed are, by custom, considered as belonging to the undertaker, as are equivalent for his expense and labour, in removing them.

The facts are fully stated, in the opinion of the court, delivered by

*Mathews, J.*

This suit was commenced to annul a contract made between the parties, in relation to the erection and completion of a dwelling-house and out buildings. The employer became dissatisfied with the manner in which the undertaker was executing his work; and availing himself of the article 2736 of the Louisiana Code, claims the right to can-

cel the bargain which he had made with the latter, &c.—— The defendant had executed a large portion of the buildings contracted for, and, during the progress of the work, had received considerable sums of money in payment for his labour. In his answer, he claims, for work done and as damages, an amount greatly exceeding that which he had received, &c. He obtained judgment in the court below for 995 dollars; from which the plaintiff appealed.

The undertaker, by the contract, agreed to complete the whole work for 5800 dollars; during its progress, he received 3900. The proprietor, after cancelling the contract, caused his buildings to be finished by another mechanic, at an expense of 2800 dollars; and now claims to have refunded to him, by the first architect, the difference between the aggregate of the sums paid by him, say $6700 and 5800 the sum for which he contracted in the first instance. The first question to be examined arises out of *the interpretation which* ought to be given to the article of the code on which both parties seem to rely. It grants to the proprietor a right to cancel, at pleasure, the bargain he has made, even in case the work has been already commenced, by paying *the undertaker for the expense and labour already incurred, and such damages as the nature of the case may require.*

There is something novel in this provision of our law, thus giving a right to one of the parties to a contract, to annul it *ad libitum.* It is perhaps, however, founded in wisdom, considering the uncertainty of titles to real estate in this country, arising from the multifarious tacit mortgages and privileges, established by law, and the formalities required, to render valid, a forced sale under execution, &c. But when a party avails himself of this right, the use of it must be considered as putting an end to the contract in all its parts and relations; and authorizes a valuation of the expense and labour incurred by the undertaker, by other evidence than that of the written contract itself. The

A proprietor may cancel at pleasure the contract with an undertaker to build—but in the exercise of this right the use of it must be considered as putting an end to the contract in all its parts and relations, and authorises a valuation of the expense and labor incurred by the undertaker, by other evidence than that of the written contract itself.

expressions of the law clearly evince an intention in the legislators, that this should be the effect produced by the abrogation of the bargain. And we are unable to see the arguments of counsel, in the same force in which they seemed to operate on their minds, drawn from the probable injustice and faithlessness of undertakers in the execution of their work, whenever they discovered that they had made a bad bargain, in order to compel proprietors to cancel it. There is, perhaps, as much probability that the latter might be induced to make an improper use of their power, when they discovered that they had agreed to pay too much.

The amount stipulated in a contract thus avoided, may be correctly used as a means to ascertain the just value of the work performed; but ought not to be considered in exclusion of all other testimony. The witnesses who were examined in this cause, most of them architects and undertakers by profession, differ materially in their estimates of the value of materials furnished and labour performed by the defendant. It is the interest of such men to value services which they are in the habit of performing, at the highest possible rate; and there is sometimes an *esprit de corps* prevailing among them, formidable to the interest of proprietors, when any collision occurs between the latter and one of their body. Taking these circumstances into view, the truth will, in most cases, be most probably found in the lowest estimate made by any one of them, when called on to value services rendered by men of their art; considered all of characters equally unexceptionable, and uninfluenced by circumstances, having a peculiar tendency to operate more on one than another of them.

A report was made by experts, to whom the valuation of the labour performed by the appellee was submitted; but as this report was set aside, the cause must be decided on other evidences found on the record; and that consists of the written contract between the parties, and the testimony of witnesses above alluded to.

*The amount stipulated in a contract, thus avoided, may be correctly used as a means to ascertain the just value of the work performed—but ought not to be considered in exclusion of all other testimony.*

*Where architects and undertakers are called upon to estimate the value of work and materials, and differ in their opinions, the lowest estimate will be taken.*

The contract we have seen estimated the whole value of materials and labour, necessary to complete the buildings, at 5,800 dollars, of which 3,900 were paid to the undertaker before he was discharged from the work ; and the proprietor, afterwards, paid 2,800 to another person to finish the works. A Coursel, a mechanic and one of the witnesses, put a lower estimate on the expense and labour of the defendant, than any other who testified in the cause; it is more in conformity with that made by the parties to the contract, in their written agreement, than the valuation made by other witnesses. We do, therefore, adopt it as the basis of our judgment ; and, we believe, with the utmost propriety, considering that the appellee was discharged from his undertaking, in consequence of errors and defects in his work, allowing to him 4350 dollars for his work, good and bad, as stated by the witness. From that sum must be taken 3900 dollars paid by the plaintiff, which leaves a balance in favor of the former, of 450 dollars. In this calculation, we do not take into consideration the value of the materials of the old house which was removed from the lot by the undertaker, before the new buildings were commenced. For the evidence shews that unless their be a contrary stipulation in the contract for building, the materials of an old house removed, are, by custom, considered as belonging to the undertaker as an equivalent for his expense and labour in removing them ; and this we consider as not unreasonable, as they are generally of but little value.

It is therefore ordered, adjudged, and decreed, that the judgment of the Parish Court be annulled, avoided and reversed ; and it is further ordered, that the appellee do recover from the appellant four hundred and fifty dollars ; the former to pay the costs of this appeal, and the latter those of the court below.

Unless there be a contrary stipulation in a contract for building, the materials of an old house removed are by custom considered as belonging to the undertaker, as an equivalant for his expense and labor in removing them.