YARRUT, Judge.
This is a suit by plaintiff, a sub-contractor, to recover damages suffered when the general contractor arbitrarily terminated his sub-contract during the progress of the work. The contract price was $1,742 for installing insulation material. At the time of termination, labor and material furnished by plaintiff to the amount of $207.14 had been paid to him.
The cost of labor and material to complete the contract was $1,194.39. The gross profit would be the difference between $1,742 and $1,194.39, or $547.61. Having been paid for labor and material already furnished up to the time the contract was terminated, plaintiff contends he is entitled to recover the gross profit he would have earned had he been permitted to complete his sub-contract, said gross profit to be measured only by the difference between the overall contract price and the actual cost of labor and material to complete the work.
*798 Plaintiff estimated that $200 ;was fair for the cost of labor to the time of termination. In this, the defendant general contractor, Mr. Culotta, agreed. Plaintiff estimated his gross profit was 30%, more or less, of the overall contract price. Culotta testified that general contractors usually figure their profit from 8% to 10%, while sub-contractors usually figure from 25% to 30%. As a matter of fact, Culotta generally supported the testimony of plaintiff, though he frankly admitted he was not too familiar with, and could not testify as to, plaintiff’s actual cost of labor and material.
Plaintiff testified, without rebuttal, that costs and gross profits fluctuate from one job to another, some yielding more or less profit, due to various factors, such as, miscalculating the size of the job, weather conditions, fluctuating labor costs, hauling material to upper floors, scaffolding, etc. Culotta did testify that, though plaintiff had already expended $207.14 for labor and material, it cost $2,241.81 to complete the uncompleted work.
It is the contention of defendants (contractor and surety) that there must be deducted from the gross profit various overhead items that the sub-contractor would have to pay in operating his general business, such as, rent, cost of office help, salesmen, insurance, etc., none of which plaintiff proved. Plaintiff merely proved that his gross profit on this job was $547.61, without any deduction other than the actual cost of labor and material on this job.
Plaintiff is correct in this contention. The damage recoverable by a sub-contractor, whose sub-contract is terminated by the general contractor, without any fault on his part, is governed exclusively by LSA-C.C. Art. 2765. The loss recoverable is measured only by the difference between the fixed contract price and the cost of labor and material furnished to the time of termination, plus the cost of labor and material still necessary to complete the contract, in accordance with plans and specifications.
In our jurisprudence there is no case that holds that the method of computing loss of profits under LSA-C.C. Art. 2765 should include such items as rent, cost of office help, salesmen, insurance, etc., or items other than cost of labor and material to complete the work. Housecraft Division of Southern Siding Co. v. Jones, La.App., 120 So.2d 662; Holden v. Eugino, La.App., 37 So.2d 409; Atchley v. Horne, La.App., 13 So.2d 75; Pittman v. Bourgeois, La.App., 152 So. 765; Delarosa v. Misuruca, 172 La. 190, 133 So. 441; Geary v. Board of Com’rs of Port of New Orleans, 139 La. 781, 72 So. 245; Dugue v. Levy, 114 La. 21, 37 So. 995.
The District Judge allowed recovery of $271.68, representing $207.14 for materials and labor furnished prior to cancellation of the contract, $51.79 attorney’s fees, $10 for preparation of lien, and $2.75 for its recordation, and recognition of the mate-rialmen’s and labormen’s lien and privilege on the property involved. The District Judge was in error in holding that plaintiff was required to prove his net profit, failing in which he allowed no recovery for loss of profit.
In view of the fact that plaintiff has only to prove his gross profit, which he did by a preponderance of the evidence, without any countervailing testimony, and was not required to prove his net profit, the judgment appealed from should be amended so as to include a gross profit of $547.61, plus 25% attorney’s fees thereon, with legal interest from December 10, 1958 until paid, and all costs.
Accordingly, the judgment of $271.68 will be increased by $547.61 gross profit, or a total of $819.29, plus 25% attorney’s fees on $547.61, with legal interest on the full amount from December 10, 1958, and all costs; and as amended, the judgment affirmed.
Amended and affirmed.